UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 14 CV 7833

————————————————————X

SIERRA SOTO, KIMBERLY BECHTOLD,
MICHELLE BUTLER, ROKSOLANA FLORKO,
LIUBOV KOZEDUB, AGNIESZKA MARKOT,
NANCY MENDOZA, KATE PAPECHYTS, KELSEY
PORTER, SOPHIE RAYNAUD, LUCIANA
TEMBELIS, SYDNEE WHEELER, LAILA
WILLIAMS, *individually and on behalf of all others
similarly situated,*

Plaintiffs,

-against-

CAFÉ LALO, INC., HAIM LALO, and DANIEL
REYES.

Defendants.

————————————————————X

Civil Action No.

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

JUDGE WOODS



By their attorneys, Pianko Law Group PLLC and Strauss Law PLLC, Plaintiffs

individually and as a representative of a class and collective of all others similarly situated,

respectfully set forth and allege as follows:

## JURISDICTION AND VENUE

1.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331

because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.*

("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they

are so related in this action within such original jurisdiction that they form part of the same case

or controversy under Article III of the United States Constitution.

2.    Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.    All Defendants are hereinafter collectively referred to as "Defendants." Defendants Daniel Reyes and Haim Lalo are collectively referred to as the "Individual Defendants

4.    Defendant Cafe Lalo, Inc. is a New York corporation that operates Cafe Lalo, in Manhattan, located at 201 West 83rd Street New York, New York 10024.

5.    Upon information and belief, Cafe Lalo, Inc. has an annual gross volume of sales in excess of $500,000.

6.    Defendant Haim Lalo is an owner and operator of Cafe Lalo. Haim Lalo exercises sufficient control of Cafe Lalo's day to day operations to be considered Plaintiffs' employer under the Fair Labor Standards Act and New York state law.

7.    Defendant Lalo, as the owner of Café Lalo, had power over personnel decisions and payroll decisions, and the power to set work schedules and maintain employment records at Café Lalo. Haim Lalo is actively involved monitoring the restaurant's financials.

8.    Deendant Lalo is an employer for purposes of New York Executive Law 296(6).

9.    Defendant Daniel Reyes is the manager of Cafe Lalo, with power over personnel decisions, the power to discipline employees, the power to set work schedules, and exercises supervisory control over Cafe Lalo.

10.   Defendant Reyes is sued in his individual capacity pursuant to New York Executive Law 296(6) for aiding, abetting and inciting a hostile work environment, described below, and because he is Plaintiffs manager for the purposes of New York Executive Law 296(6).

11.   Plaintiff Sierra Soto was employed by Defendants as a waitress between approximately September 2013 to May 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.

12.   Plaintiff Kimberly Bechtold was employed by Defendants as a waitress between approximately the end of 2011 to September 2012 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

13.   Plaintiff Michelle Butler was employed by Defendants as a waitress, starting in September 2013 through July 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

14.   Plaintiff Roksolana Florko was employed by Defendants as a waitress between approximately January 2014 to May 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

15.   Plaintiff Liubov Kozedub was employed by Defendants as a waitress between approximately December 2013 to June 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not

regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

16.  Plaintiff Agnieszka Markot is currently employed by Defendants as a waitress, starting in December 2013 and continuing to the present and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

17.  Plaintiff Nancy Mendoza is currently employed by Defendants as a waitress, starting in April 2014 and continuing to the present and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

18.  Plaintiff Papechyts was employed by Defendants as a waitress between approximately November 2008 to May 2012 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

19.  Plaintiff Kelsey Porter was employed by Defendants as a waitress between approximately April 2014 to June 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips.  Despite working over 40 per week, no overtime wages were paid.

20.  Plaintiff Sophie Raynaud was employed by Defendants as a waitress between approximately March 2013 to August 2013 and was compensated at the tipped minimum wage

but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips. Despite working over 40 per week, no overtime wages were paid.

21. Plaintiff Luciana Tembelis was employed by Defendants as a waitress between approximately November 2012 to December 2013 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips. Despite working over 40 per week, no overtime wages were paid.

22. Plaintiff Sydnee Wheeler was employed by Defendants as a waitress between approximately August 2013 to July 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips. Despite working over 40 per week, no overtime wages were paid.

23. Plaintiff Laila Williams was employed by Defendants as a waitress between approximately November 2013 to June 2014 and was compensated at the tipped minimum wage but was involuntarily required to share her tips with employees of Café Lalo who did not regularly and customarily receive tips. Despite working over 40 per week, no overtime wages were paid.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24. Plaintiffs bring the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, in any tipped position on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs"), except baristas who served as management level employees, cashiers, kitchen staff and take-out delivery persons employed by Cafe Lalo.

25.   At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage for all hours worked and allowing employees who do not regularly and customarily receive tips as well as defacto managers to share in their tips. The Claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.   The First Claim of Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). the FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS - NEW YORK LABOR LAW

27.   Plaintiffs bring the Second and third Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons, except for those with job titles as specified above in paragraph 22, employed by Defendants at Cafe Lalo in any tipped position on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

28.   All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held,

and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to their action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

29. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than fifty (50) members of the Class.

30. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and relief sought is typical of the relief which would be sought by each member of the Class in separate. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage compensation, and illegal retention of tips. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

31. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In, addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure

employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating these risks.

34.     Common questions of law and fact exist with respect to the Class and predominate over any questions unique to or effecting only selective members.  Those questions include but are not limited to: (a) whether Defendants had a policy or practice of failing to pay Plaintiffs and the Class minimum wage for all hours worked in violation of the NYLL; (b) whether Defendants had a policy or practice of failing to pay Plaintiffs and the Class overtime wages; (c) whether Defendants had a policy or practice of failing to pay Plaintiffs and the Class spread-of-hours pay in violation of the NYLL; (d) whether Defendants provided Plaintiffs and the Class statements and notices of wages, hours worked, rate of pay and gross wages as required by the NYLL; (e) the nature and extent of class-wide injury and the measure of damages for those injuries; (f) whether Defendants' policy or practice of underpaying Plaintiffs and the class was instituted willfully or with reckless disregard for the law; (g) whether Defendants obtained an immediate advantage from the work of Plaintiffs and the Class.

## CLASS ALLEGATIONS UNDER FEDERAL RULES OF CIVIL PROCEDURE 23(b)(2) AND 23(b)(3) FOR VIOLATIONS OF TITLE VII AND THE NEW YORK STATE AND CITY HUMAN RIGHTS LAWS

35.     Plaintiffs bring this action on behalf of themselves and all other female employees who were, have been or will be employed by Cafe Lalo, and who were, have been or will be subjected to sex discrimination, sexual harassment in the form of hostile work environment and retaliation for the exercise of their rights for the purposes of individual claims for compensation or damages.

36.   Upon information and belief, this class of persons consists of not less than fifty (50) persons, and thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P 23(a)(1).

37.   There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiffs by Cafe Lalo is subject to the jurisdiction and the requirements of Title VII, the New York Human Rights Law and New York City Human Rights Law, and whether a preliminary and then permanent injunction enjoining defendants from violating the above laws is appropriate. Only the amount of individual damages sustained by each class member will vary.

38.   The claims of the Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

39.   The Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

40.   In addition, Defendants have acted or refused to act on grounds that apply generally to the class, so that final inductive relief or corresponding declaratory relief is appropriate respecting the class as a whole under Fed. R. Civ. P. 23(b)(2).

41.   Defendants' violations of Title VII, the New York Human Rights Law, and the New York City Human Rights Law are continuing and will continue. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P 23(b)(3).

42.   Plaintiffs bring all claims that Plaintiffs and all persons similarly situated have against Cafe Lalo as a result of Cafe Lalo's violations under Title VII, the New York Human

Rights Law and the New York City Human Rights Law and the common law of the State of New York on behalf of themselves individually and all persons similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23.

## FACTS RELATING TO DEFENDANTS' VIOLATIONS OF THE WAGE LAWS

43.    Plaintiffs' consent to sue forms are attached hereto as Exhibit A.

44.    Defendants committed the following acts knowingly, intentionally, and willfully.

45.    Defendants knew that the nonpayment of minimum wage, nonpayment of overtime, and improperly forcing and/or the Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class to share their tips with employees who do not regularly and customarily receive tips would economically injure Plaintiffs and violated state and federal laws while, at the same time, allowing Defendants to financially benefit

46.    Plaintiffs were paid based on the Federal and State tipped worker minimum wage on an hourly basis, and were given tip credits pursuant to 29 U.S.C. 203(m) and 12 N.Y.C.R.R. § 137-1.5. However, Defendants were not entitled to reduce the minimum wage by applying the tip credit allowance because Defendants required Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class to share tips with employees who do not regularly and customarily receive tips, such as cooks, dishwashers, who did not directly interact with customers Cooks and, dishwashers staff were not visible by the majority of patrons at Cafe Lalo and did not work in service positions.

47.    Plaintiffs were also forced to share tips with "baristas" who served in defacto management positions.  Baristas, such as Defendant Reyes, were authorized by Defendant Haim Lalo to schedule Plaintiffs, terminate Plaintiffs, discipline Plaintiffs, and otherwise supervise Plaintiffs day to day activities when Defendant Haim Lalo was not present.

48. Defendants illegally retained substantial portions of Plaintiffs and class members' tips and/or misappropriated them to non-service employees, such as cooks, dishwashers, and baristas, who served as managers.

49. Upon information and belief, Defendants retained for themselves a portion of Plaintiffs' tips and did not place that portion into the tip-pool for distribution.

50. Plaintiffs were never paid overtime wages despite regularly working over 40 hours per week.

## FACTS RELATING TO HOSTILE WORK ENVIRONMENT

51. Cafe Lalo is being marketed to the public as a romantic place with a unique European theme, open-air atmosphere, and a place to see or be seen. The popularity of the restaurant is further highlighted by its inclusion in the feature film "You've Got Mail."

52. However, the reality of work conditions for Plaintiffs and other females similarly situated at Cafe Lalo belies the image of an upscale European Cafe. At all times relevant hereto, Defendant Reyes (hereinafter known as "Defendant Reyes"), a barista and defacto manager, who was close friends with Defendant Haim Lalo, treated the restaurant as his own personal dating service and a place where he could indulge in his unwholesome desires.

53. Upon information and belief, Defendant Reyes would aggressively pursue Plaintiffs and those similarly situation with romantic intent. If such pursuits were met with rejection, Defendant Reyes would become verbally or, at times, physically abusive.

54. Upon information and belief, Defendant Reyes regularly worked his shifts, or would linger around the restaurant, in a visibly intoxicated state.

55. At all times relevant hereto, and during each Plaintiff's employment with Defendants, Defendant Reyes engaged in a continuous course of conduct directed at each

plaintiff and other female employees of Cafe Lalo that was imbued with sexuality, vile, demeaning to women and out of bounds of acceptable behavior. Such conduct amounted to sexual discrimination, sexual harassment and hostile work environment.

56.   The conduct of Defendant Reyes, as described below, has been sufficiently severed occurred in a regular and pervasive manner, which it had detrimental effect on, and interfered with, each Plaintiff's health and well-being.

57.   Upon information and belief, because of Defendant Reyes's constant harassment of female staff and Defendants' other unlawful practices, Cafe Lalo has a large turnover of female wait staff.

58.   Defendants other than Defendant Reyes were fully aware, or should have been aware, of Defendant Reyes's scandalous conduct and failed to prevent it. Being aware of Defendant Reyes's conduct, the remaining Defendants also failed to take any measures to protect Plaintiffs from further harassment by Defendant Reyes.

59.   In taking, or failing to take, the actions described below, all Defendants acted with malice, reckless and callous indifference to federal, state, and local anti-sexual harassment laws, which they knew of or should have known of and, through their course of conduct, caused each Plaintiff to suffer emotional injuries.

60.   Defendants' violations of the anti-harassment laws, city, state, and federal, are continuing and will continue to the detriment of all female employees at Cafe Lalo, such that a preliminary injection must be entered until a hearing can be held, after which a permanent injection must be entered.

### *Working Shifts Used to Select Potential Romantic Interests*

61.   Defendant Reyes takes it upon himself to use shifts that he shares with Plaintiffs in whom he takes a one-sided romantic interest as a means to make unwanted romantic advances upon them. Upon information and belief, Defendant Reyes uses his power as defacto manager and personal friend of Defendant Haim Lalo to attempt to intimidate Plaintiffs and those similarly situated through use of aggressive sexual advances and verbal and physical threats. Moreover, Defendant Reyes has several times been intoxicated while on the job, further enhancing his vile, lecherous, and sexually aggressive behavior.

62.   Plaintiff Bechtold suffered through Defendant Reyes's behavior on a regular basis. Since Defendant Reyes was the defacto manager, he was in charge of what and when Plaintiffs and those similarly situated could eat. Upon information and belief, Defendant Reyes attempted to leverage this power to further his romantic intent with Plaintiffs and those similarly situated. After Defendant Reyes gave Plaintiff Bechtold something to eat or drink, he asked her out to dinner and for her to be his girlfriend. Despite Plaintiff Bechtold's rejection, Defendant Reyes's behavior only worsened.

63.   Defendant Reyes would refer to Plaintiff Bechtold regularly throughout the course of her work as a "nasty girl" and would make similar demeaning comments throughout her shift. Once Plaintiff Bechtold made it clear that she was refusing Defendant Reyes's sexual advances, he would get angry and publicly call her "stupid" and a "fucking bitch." This behavior was repetitive and frequent.

64.   In another instance, Plaintiff Bechtold was gathering her belongings post shift and Defendant Reyes approached her from behind. Defendant Reyes proceeded to hug Plaintiff Bechtold, against her will, for an uncomfortable amount of time. Given Plaintiff's knowledge of

Defendant Reyes's proclivity for aggression and verbal abuse, she tried to quietly and quickly move away from Defendant Reyes as soon as possible.

65.  Plaintiff Florko was warned by a employee of Defendant Reyes's behavior on her first day of training for Defendants'. Upon information and belief, because Defendant Reyes's behavior was so pervasive and recurring, Plaintiff Florko was warned that as a newly hired waitress, Defendant Reyes will likely start making sexual advances towards her and, if she did not comply and since Defendant Reyes was personal friends with Defendant Haim Lalo, she may suffer adverse employment consequences if she did not comply.

66.  Once Plaintiff Florko began working full time, Defendant Reyes did in fact make sexual advances towards her. Defendant Reyes would write her notes saying that he liked her and would invite her out for romantic evenings with him. Further, and after he received no response from Plaintiff Florko on one instance, he grabbed her hand while she was washing dishes and started petting it. Plaintiff Florko pulled her hand away and tried to continue about her work with a focus on keeping a comfortable distance away from Defendant Reyes.

67.  Defendant Reyes would frequently block the path of Plaintiff Florko in an effort to engage in physical contact. This affected Plaintiff Florko's ability to do her job well and adversely affected her working conditions as a whole.

68.  In April 2014, after constant harassment and uncomfortability caused by Defendant Reyes, Plaintiff Florko complained to management about Defendant Reyes's behavior, towards both her and other women that worked at Cafe Lalo. Management informed Plaintiff Florko that they were not aware of said behavior, despite, upon information and belief, other complaints that were lodged against Defendant Reyes by Plaintiffs and those similarly situated.

69. Plaintiff Kozedub was also subject to Defendant Reyes's sexual advances. Defendant Reyes regularly would ask Plaintiff Kozedub on dates and, once she rejected such advances, would become verbally aggressive. Defendant Reyes would regularly demean and humiliate Plaintiff Kozedub with constant verbal insults in front of customers and other employees as retribution for her denial of his advances.

70. In one instance, following various occasions on which Defendant Reyes had asked Plaintiff Kozedub on a date and she subsequently rejected said offer, Defendant Reyes publicly reprimanded her for giving a free dessert to a customer after being directed to do so by management. Not only was Defendant Reyes exercising his verbal aggression to intimidate Plaintiff Kozedub as a result of her rejection of him, but he also exercised power over management to determine which customers received food, further implicating his status as a defacto manager.

71. Defendant Reyes would frequently scream at Plaintiff Kozedub if a customer mistakenly ordered a wrong item or changed their mind. Even if the order change was at the customer's behest, Plaintiff Kozedub suffered the consequences and was forced to constantly apologize for customer requests, lest Defendant Reyes become even more verbally abusive.

72. Plaintiff Kozedub did not report Defendant Reyes's behavior to management for fear of retribution because of Defendant Reyes's apparent close relationship and personal friendship with Defendant Haim Lalo

73. Plaintiff Papechyts began work with a belief Defendant Reyes was a defacto manager and shielded from any consequences of his actions. On many occasions, she witnessed Defendant Reyes appear for work intoxicated and behaving inappropriately.

16

73.    On a regular and constant basis throughout her employment, Plaintiff Papechyts was subject to Defendant Reyes's grossly inappropriate behavior. Such behavior included, but is not limited to, constant extremely inappropriate comments with sexual implications, inappropriate body language, gestures with sexual implications, and inappropriate jokes of sexual character, sexual insinuation.

74.    Plaintiff Papechyts was fearful of being alone at the restaurant with Defendant Reyes as a result of his behavior.

75.    Plaintiff Papechyts did not report Defendant Reyes's behavior to management for fear of retribution because of Defendant Reyes's apparent close relationship and personal friendship with Defendant Haim Lalo

76.    Plaintiff Williams suffered similar treatment during her shifts that she worked with Defendant Reyes. Defendant Reyes would frequently inquire into private and personal matters of Plaintiff Williams, looking for ways in which he might manipulate her into some kind of romantic involvement. At one point, Defendant Reyes attempted to pay Plaintiff Williams to come to his apartment and clean, an obvious attempt to lure her to his apartment. This made her extremely uncomfortable.

77.    When Plaintiff Williams asked Defendant Reyes to stop, he became extremely angry with her and would be verbally aggressive. He would verbally assault Plaintiff Williams in plain view of coworkers and customers.

78.    Upon information and belief, Plaintiff Williams did not report Defendant Reyes's behavior to management for fear of retribution because of Defendant Reyes's apparent close relationship and personal friendship with Defendant Haim Lalo

79.   Plaintiff Soto began work with a belief Defendant Reyes was a defacto manager and shielded from any consequences of his actions. On many occasions, she witnessed Defendant Reyes appear for work intoxicated and behaving inappropriately.

80.   Plaintiff Soto was subjected to Defendant Reyes's advances regularly and frequently throughout her shifts and her time working for Defendants. Defendant Reyes would frequently grab her from behind the counter in the front of the restaurant and demand a kiss or to hold his hand. If Plaintiff Soto refused, which she did on every occasion, Defendant Reyes would become verbally abusive and she would have to use substantial physical effort to get away from his grasp.

81.   At one point, after Plaintiff Soto rejected Defendant Reyes's sexual advances many times, he became enraged after he had been required to make a beverage twice for a table Plaintiff Soto was serving. Defendant Reyes proceeded to threaten to kill Plaintiff Soto and waved a large kitchen knife at her.

82.   Plaintiff Wheeler was subjected to Defendant Reyes's aggressive and abusive behavior on a regular and continual basis. During her shifts, Defendant Reyes would make sexual advances and respond aggressively and abusively to Plaintiff Wheeler's rejection.

83.   On yet another instance approximately in late June or early July 2014, after relaying concerns to management about what transpired with the kitchen knife and Plaintiff Soto, Defendant Reyes was allowed to continue to work at Cafe Lalo. Plaintiff Wheeler was getting change from the cash register when Defendant Reyes snuck up behind her and wrapped his arms around her waist. After she told him she did not like being touched, it became apparent to Plaintiff Wheeler that Defendant Reyes was intoxicated. Defendant Reyes responded to her rejection by saying "well fuck you too, then" and stumbled outside.

18

84.   Defendant Reyes would continually grab Plaintiff Wheeler's hand and kiss it against her will as she was standing at the counter waiting to greet and seat customers. Despite Plaintiff Wheeler's constant pleas for Defendant Reyes to stop, this behavior continued.

85.   At another instance in which Plaintiff Wheeler was eating lunch during her lunch break, Defendant Reyes snuck up behind her once again and wrapped his arms around her waist. Plaintiff Wheeler protested and Defendant Reyes said "Oh!" ruffled her hair and then smacked her on her head.

86.   Plaintiff Soto, along with Plaintiff Wheeler, informed management of Defendant Reyes's aggressive and abusive behavior. They asked to speak with Defendant Haim Lalo regarding the situation in which Defendant Reyes threatened Plaintiff Soto with a kitchen knife. Despite the seriousness of the situation and the continual and recurring abusive and aggressive behavior of Defendant Reyes, Defendant Lalo never once addressed Plaintiffs Soto or Wheeler's concerns regarding this instance. In fact, Defendant Reyes was allowed to continue working as a defacto manager.

87.   On another occasion, Plaintiff Wheeler complained to management about Defendant Reyes's behavior, but nothing was done to curtail said behavior. Plaintiff Wheeler had a meeting with Defendant Haim Lalo and other members of the management. Defendant Reyes was also present for part of the meeting. Plaintiff Wheeler was informed by Defendant Haim Lalo and other members of the management that it was Defendant Reyes's way. Defendant Reyes was never fired or removed from the presence of Plaintiff Wheeler throughout the remainder of her Employment with Cafe Lalo.

88.   Plaintiff Markot offered support to Plaintiff Wheeler after realizing that Defendant Lalo and other members of the management team had done little to address Plaintiff Wheeler's

concern. Plaintiff Markot, despite simply being a decent human being and comforting her coworker, was screamed at by Defendant Lalo and his mistress to stay away from Plaintiff Wheeler. While she did not suffer an assault directly from either Defendant Lalo or Defendant Reyes, as many of her other coworkers have, she did suffer negative treatment as a result of her concern for plaintiff Wheeler, as demonstrated by Defendant Lalo's reaction.

## FIRST CLAIM FOR RELIEF
### (FLSA Claims, 29 U.S.C. §§ 201 *et. seq.*, Brought by Plaintiffs on Behalf of Plaintiffs and the FLSA Collective Against Defendant Lalo and Café Lalo)

89.   Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

90.   At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

90.   Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs the federal minimum wage for each hour worked.

91.   Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. §§ 201 *et. seq.* Brought by Plaintiffs on Behalf of Plaintiffs and the FLSA Collective Against Defendant Lalo and Cafe Lalo)

92.   Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

93.   Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek and continue to do so.

94.   At all relevant times, Defendants have operated under a decision, policy, and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing to pay the FLSA Collective Plaintiffs at one and a half times the minimum wage for all work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

95.   At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rates, one and a half times the federal minimum wage worked in excess of forty (40) hours per workweek.

96.   Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective overtime compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Act, New York Labor Law §§ 650 *et. seq.* Brought by Plaintiffs on Behalf of Plaintiffs and the Class Against Defendant Lalo and Cafe Lalo)**

97.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

98.   Defendants knowingly paid the Plaintiffs and members of the Class less than the New York state minimum wage.

99.   Defendants did not pay Plaintiffs of Class members the New York minimum wage for all hours worked.

100.   Defendants' failure to pay Plaintiffs and members of the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

101.   As a result of Defendants' willful violations of N.Y. Lab. Law, Plaintiffs and the Class members are entitled to recover their respective unpaid compensation, liquidated damages as provided for the New York Labor Law, attorneys' fees and costs, pre- and post judgment interest, and other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(New York Overtime Violations)**
**(New York Minimum Wage Act, N.Y. Stat. § 650 et. seq., N.Y. Comp. Codes R. & Regs.**
**Tit. 12, 146-1.4 Brought by Plaintiff on Behalf of Plaintiffs and the Class Against Defendant**
**Lalo and Cafe Lalo)**

102.   Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

103.   It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

104.   Throughout the Class Period, Defendants willfully, regularly, and repeatedly, failed to pay Plaintiff and the Class at the required overtime rates, one-and-a-half times the minimum wages for hours worked in excess of forty (40) hours per workweek.

105.   As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated

damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Illegal Pay Deductions and Deductions from Gratuities, N.Y. Lab. L. § 196-d Brought by Plaintiffs on Behalf of Plaintiffs individually and the Class, Against Defendant Lalo and Cafe Lalo)

106. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

107. Defendants retained and/or misappropriated portions of Plaintiffs' tips and Class members' tips.

108. As a result of Defendants' willful and unlawful conduct, Plaintiffs and the Class members are entitled to an award of damages in an amount to be determined at trial, liquidated damages, and attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Hostile Work Environment under Title VII, 42 U.S.C. §2000e-(3)a against Cafe Lalo on Behalf of Plaintiffs and the Class)

109. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

110. When employed by Defendants, Plaintiffs were employees within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(f).

111. At all relevant times herein, Defendants were employers within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(b).

112. Title VII, 42 U.S.C. §2000e-2(a) makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's…sex."

113. Defendants had a sexually hostile work environment sufficient severe and pervasive to alter the terms and conditions of plaintiffs' employment and create an abusive work environment, in violation of 42 U.S.C. §2000e-2(a).

114. Defendants are liable for the hostile work environment at Cafe Lalo because it was created and fostered by management at Cafe Lalo and/or because Cafe Lalo did not take adequate steps to prevent or address instances of sexual harassment.

115. Said discrimination occurred with malice and reckless disregard of Plaintiffs' rights.

116. As a direct and proximate result of this discrimination against Plaintiffs, they suffered and continue to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish, pain and suffering.

### SEVENTH CLAIM FOR RELIEF
**(Hostile Work Environment under N.Y. Executive Law 296 against all Defendants on Behalf of Plaintiffs and the Class Against All Defendants)**

117. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

118. At all relevant times herein, Cafe Lalo had at least four persons in its employ and therefore Cafe Lalo and its agents and employees are and were required to comply with the Human Rights Laws of the State of New York, in clouding N.Y. Executive Law 296.

119. N.Y. Executive Law 296(1)(a) prohibits employers from discriminating against an employee because of gender "in compensation or in terms, conditions or privileges of employment."

120. N.Y. Executive Law 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

121. The sexually hostile work environment at Cafe Lalo was sufficient severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create an abusive working environment in violation of N.Y. Executive Law 296(1)(a).

**122.** Defendant Haim Lalo and Defendant Reyes are liable to Plaintiffs and the class pursuant to N.Y. Executive Law 296(6).

123. Said discrimination occurred with malice and reckless disregard of Plaintiffs' rights.

124. As a direct and proximate result of this discrimination against Plaintiffs, they suffered and continue to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish, pain and suffering.

### EIGHTH CLAIM FOR RELIEF
**(Hostile Work Environment under N.Y. City Admin. Code §8-107 against all Defendants Defendants on Behalf of Plaintiffs and the Class Against All Defendants)**

125. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

126. At all relevant times herein, Cafe Lalo had at least four persons in its employ and therefore Cafe Lalo and its agents and employees are and were required to comply with the Civil Rights Laws of New York, including N.Y. City Admin. Code §8-107.

127. N.Y. City Admin. Code §8-107(1)(a) prohibits employers from discriminating against an employee because of gender "in compensation or in terms, conditions or privileges of employment."

128. N.Y. City Admin. Code §8-107(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

129. The sexually hostile work environment at Cafe Lalo was sufficient severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create an abusive working environment in violation of N.Y. City Admin. Code §8-107(1).

130. Defendant Haim Lalo and Defendant Reyes are liable to Plaintiffs and the class pursuant to N.Y. City Admin. Code §8-107.

131. Said discrimination occurred with malice and reckless disregard of Plaintiffs' rights.

132. As a direct and proximate result of this discrimination against Plaintiffs, they suffered and continue to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish, pain and suffering.

### NINTH CLAIM FOR RELIEF
**(Negligent Supervision against Cafe Lalo on Behalf of Plaintiffs and the Class)**

133. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

134. Cafe Lalo employed Defendant Reyes as a defacto manager of Cafe Lalo.

135. Defendant Reyes's patently unlawful sexual harassment was open and notorious and committed within the full view of all of Cafe Lalo's employees.

136. Cafe Lalo had or should have had actual notice of Defendant Reyes's unlawful conduct.

137. By harassing Plaintiffs at work, Defendant Reyes committed his unlawful acts on the premises of Cafe Lalo.

138. Cafe Lalo had a duty to Plaintiffs, its employees, to properly supervise its employees, including Defendant Reyes.

139. Cafe Lalo failed to properly supervise its employee, Defendant Reyes, and in failing to do so, allowed Defendant Reyes to engage in unlawful conduct, and therefore violated its duty to Plaintiffs.

140. As a direct and proximate result of the failure to Cafe Lalo to properly supervise Defendant Reyes. Plaintiffs suffered and continue to suffer actual damages, in forms including but not limited to mental anguish, pain and suffering.

## TENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress against Defendant Reyes Defendant Reyes and Café Lalo by Plaintiffs Soto, Bechtold, Floko, Kozedub, Papechyts, Williams and Wheeler)

141. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

142. That throughout the entire course of Plaintiffs' employment for Defendants, Defendant Reyes engaged in a continuous course of cruel and inhuman treatment of Plaintiffs, including a continuous stream of sexual comments and actions designed to entice Plaintiffs into engaging in sexual relations with Defendant Reyes, as well to intimidate Plaintiffs.

143. That such actions by Defendant Reyes were cruel and inhuman and thus, endangered and adversely affected Plaintiffs' physical and mental well-being, causing Plaintiffs to suffer severe emotional distress and rendering it unsafe and improper for Plaintiffs to continue to work for Defendants. In addition, such actions by Defendant Reyes were willful, intentional, unwarranted, evincing a high degree of moral turpitude and demonstrating wanton disregard for, and indifference to, civil obligations and were without any just cause or provocation, and caused Plaintiffs to suffer humiliation, degradation of their persons, and Plaintiffs have become tense, nervous, irritable, have suffered great mental anguish, anxiety, loss of sleep and have sustained other psychological injuries.

144. That as a result of said intentional infliction of emotional distress to Plaintiffs by Defendant Reyes, Plaintiffs have been subject to public humiliation, embarrassment and ridicule and have suffered extreme mental and emotional anguish.

145. Café Lalo is liable for Defendant Reyes's actions by virtue of the doctrine of respondeat superior.

146. Wherefore, Plaintiffs each demands judgment on this Tenth Claim for Relief, against Defendant Reyes, for damages in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and plus an additional amount of Five Hundred Thousand Dollars ($500,000.00) in punitive damages, plus interest and the costs of this action.

## ELEVENTH CLAIM FOR RELIEF
### (Assault by Plaintiffs against Defendant  Reyes  Defendant Reyes and Café Lalo by Plaintiffs Soto, Bechtold, Florko, and Wheeler)

147. Plaintiffs, on behalf of themselves and the Class member, reallege and incorporate by reference all of the previous paragraphs.

148. That Defendant Reyes, by making repeated and aggressive gestures and sexual offers to Plaintiffs despite their numerous refusals to engage in such conduct, intentionally, willfully, wantonly, and maliciously placed Plaintiffs in immediate apprehension of physical harm.

149. That such actions by Defendant Reyes were willful, intentional, and unwarranted, and were without any just cause or provocation.

150. That as a result of said assault of Plaintiffs by Defendant Reyes, Plaintiffs have been subject to public humiliation, embarrassment and ridicule and have suffered extreme mental and emotional anguish.

151. Café Lalo is liable for Defendant Reyes's actions by virtue of the doctrine of respondeat superior.

152. Wherefore, Plaintiffs each demands judgment on this Eleventh Claim for Relief, against Defendant Reyes, for damages in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and plus an additional amount of Five Hundred Thousand Dollars ($500,000.00) in punitive damages, plus interest and the costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A.     Designation of this collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.     Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

C.     Designation of this action as a class action pursuant to F.R.C.P. 23.;

D.     Designation of Plaintiffs as Representative of the Class;

E.     An Award of damages, according to proof, including liquidated damages, to be paid by Defendant;

F.     Penalties available under applicable laws;

G.     Costs of action incurred herein, including expert fees;

H.    Attorney's fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I.    Pre-judgment and post-judgment interest, as provided by law; and

J.    Such other and further legal equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
       September 26, 2014

By:   */s/ Maurice Pianko*
      Maurice Pianko, Esq. (MP 6486)
      PIANKO LAW GROUP PLLC
      55 Broad Street, #13F
      New York, NY 10004
      mpianko@gmail.com
      Phone (646) 801-9675
      Facsimile (646) 381-3612

By:   */s/ Jesse Strauss*
      Jesse Strauss (JS 0212)
      STRAUSS LAW PLLC
      305 Broadway, 9th Floor
      New York, NY 10007
      jesse@strausslawpllc.com
      Phone (212) 822-1496
      Facsimile (212) 822-1407

      *Attorney for Sierra Soto, on behalf of herself
      and all others similarly situated.*